**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW JERSEY**

| | | |
|---|---|---|
| RONALD CARESTIA<br>1 High Park Place<br>Clifton, NJ 07011<br><br>Plaintiff,<br>v.<br><br>SMG SYLVAN LLC d/b/a MASERATI AT ENGLEWOOD CLIFFS<br>340 Sylvan Ave<br>Englewood Cliffs, NJ 047632<br>and<br>SMG AUTOMOTIVE HOLDINGS, LLC<br>2286 Flatbush Avenue<br>Brooklyn, NY 11234<br><br>Defendants. | : | CIVIL ACTION<br><br>No.:<br><br>**JURY TRIAL DEMANDED** |

**CIVIL ACTION COMPLAINT**

Ronald Carestia ("Plaintiff") by and through his undersigned counsel, hereby avers as follows:

**INTRODUCTION**

1. Plaintiff has initiated this action to redress violations by SMG Sylvan LLC d/b/a Maserati at Englewood Cliffs and SMG Automotive Holdings, LLC (collectively "Defendants") of the Americans with Disabilities Act, as amended ("ADA" – 42 USC §§ 12101 *et. seq.*) and the Age Discrimination in Employment Act ("ADEA" – 29 U.S.C. §§ 621 *et. seq.*). Plaintiff was unlawfully terminated from his employment by Defendants, and he suffered damages more fully described/sought herein.

## JURISDICTION AND VENUE

2. This Court has original subject matter jurisdiction over the instant action pursuant to 28 U.S.C. §§ 1331 and 1343(a)(4), because it arises under the laws of the United States and seeks redress for violations of federal laws.

3. This Court may properly maintain personal jurisdiction over Defendants because their contacts with this state and this judicial district are sufficient for the exercise of jurisdiction over Defendants to comply with traditional notions of fair play and substantial justice, satisfying the standard set forth by the United States Supreme Court in *Int'l Shoe Co. v. Washington,* 326 U.S. 310 (1945), and its progeny.

4. Pursuant to 28 U.S.C. § 1391(b)(1) and (b)(2), venue is properly laid in this district because a substantial about of the events giving rise to the claims occurred in this district.

5. Plaintiff is proceeding herein under the ADA and ADEA and has exhausted his administrative remedies by timely filing a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC"), and by filing the instant lawsuit within ninety (90) days of receiving a right to sue letter from the EEOC.[1]

## PARTIES

6. The foregoing paragraphs are incorporated herein their entirety as if set forth in full.

7. Plaintiff is an adult who resides at the above-captioned address.

8. Defendant SMG Sylvan LLC d/b/a Maserati at Englewood Cliffs ("Defendant Maserati) is a Maserati dealership located at the above-captioned address.

[1] On August 11, 2026, the EEOC issued Plaintiff a probable cause finding in favor of Plaintiff (finding Plaintiff was likely terminated because of discrimination). An EEOC determination is admissible if its probative value outweighs its prejudicial effect, which is generally the case. *Abrams v. Lightolier, Inc.*, 702 F. Supp. 509, 512 (D.N.J. 1988).

9. Defendant SMG Automotive Holdings, LLC ("Defendant Holdings") is a New York based automotive dealership holding company.

10. Upon information and belief, because of their interrelation of operations, common ownership or management, centralized control of labor relations, common ownership or financial controls, and other factors, Defendants are sufficiently interrelated and integrated in their activities, labor relations, ownership and management that they may be treated as a single/integrated and/or joint employer for purposes of the instant action.

11. At all times relevant herein, Defendants acted by and through their agents, servants and employees, each of whom acted at all times relevant herein in the course and scope of their employment with and for Defendants.

**FACTUAL BACKGROUND**

12. The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

13. Plaintiff is a 69-year-old man.

14. Plaintiff was hired by Defendants as a Driver on or about August 8, 2023. In this capacity, Plaintiff drove vehicles for Defendants all over New Jersey and to and from other states as well.

15. Plaintiff suffers from testicular and aortic cancer, among other health problems and medical complications.

16. Despite undergoing extensive treatment since 2019 for his aforementioned disabilities, Plaintiff's cancer has not remained in remission. He is still required to undergo ongoing medical treatments and to attend regular doctor's appointments for his disabilities.

17. For example, in or about 2022, a nephrostomy tube was placed on Plaintiff's lower back to assist with drainage. Upon looking at Plaintiff, one could see there was a tube placed underneath his clothing.

18. Plaintiff was primarily supervised by Service Manager, Ian Osborn ("Osborn" – 50s).

19. In or about early 2024, General Manager, Chris Dooney ("Dooney" – 40s) was hired.

20. Immediately upon Dooney's hire he began asking Plaintiff about the tube and Plaintiff's health status, and Plaintiff explained he had cancer and it was part of his treatment for the same.

21. Dooney and Osborn made derogatory and discriminatory comments to Plaintiff on an almost weekly basis in the approximate 5 – 6 months preceding Plaintiff's termination from employment because of his advanced age and his disabilities.

22. For example, Osborn referred to Plaintiff as "old man" and Dooney referred to Plaintiff as "cancer guy." They would use these (or similar) phrases to get Plaintiff's attention instead of referring to Plaintiff by name. They also made other discriminatory comments like asking Plaintiff if something happened or if he did something because he is "old" or had cancer. These comments were extremely offensive and upsetting to Plaintiff.

23. As a result of Osborn's and Dooney's discriminatory comments, in or about May 2024 Plaintiff complained to Human Resources ("HR") Manager, Malik Carter ("Carter") that Osborn and Dooney were discriminating against him because of his age and disabilities. Plaintiff was having a very difficult time tolerating the ongoing discrimination and hostile work environment.

24. In response to Plaintiff's complaint of age and disability discrimination, Carter responded that there was nothing he could do to address Plaintiff's complaints.

25. Because of Carter's failure to take action regarding Plaintiff's complaint, Osborn and Dooney continued making discriminatory comments to Plaintiff.

26. For example, in or about late June or early July 2024, Osborn called Plaintiff an "old man with cancer" and Dooney told Plaintiff he was "a cancer."

27. Dooney also told Plaintiff he moved too slow because Plaintiff had to stop driving occasionally to drain his nephrostomy tube. It was a very minor medical accommodation for Plaintiff to take medical breaks while driving and did not overall detract from much time performing his role (as explained in the next paragraph).

28. Plaintiff only drained the tube one (1) or (2) times during a shift and he did it during a normal bathroom break. Draining the tube only took approximately two (2) minutes and did not cause a delay in Plaintiff's work that was different to any other driver stopping to use the bathroom.

29. In or about late July 2024, Plaintiff again complained to Carter that Osborn and Dooney were discriminating against him and harassing him because of his age and disabilities.

30. Once again, in response to Plaintiff's complaint of disability and age discrimination and harassment, Carter told Plaintiff there was nothing he could do to address his concerns.

31. Thereafter, on or about August 2, 2024, Defendants terminated Plaintiff's employment for allegedly "stealing" 800 hours' worth of wages.

32. Defendants, however, were never able to provide Plaintiff with any details, support, proof or reasoning of this alleged wage theft.

33. Moreover, Defendants offered Plaintiff an unsolicited severance agreement if he agreed to waive any legal claims against Defendants.[2] This of course is not something you do if an employee is allegedly terminated for theft (and the mere offer is well known to be admissible evidence of discrimination, retaliation and pretext).

34. Plaintiff believes and therefore avers that Defendants actually terminated his employment because of his age and disabilities and because of his complaints of age and disability discrimination.

**COUNT I**
**Violations of the Americans with Disabilities Act ("ADA")**
**([1] Actual/Perceived/Record of Disability Discrimination; and [2] Retaliation)**

35. The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

36. Plaintiff suffers from qualifying health conditions under the ADA which affect his ability (at times) to perform some daily life activities.

37. At all times, Defendants were aware of Plaintiff's serious medical conditions.

38. Despite Plaintiff's aforementioned health conditions and limitations, he was still able to perform the duties of his job well with Defendants.

---

[2] Offers of severance when policies do not require it while asserting terminations for misconduct is admissible evidence in a discrimination or retaliation lawsuit. *See e.g.*, *Staffieri v. Northwestern Human Servs*., 2013 U.S. Dist. LEXIS 72115, at *25 (E.D. Pa. 2013) (employer's decision to offer Plaintiff severance on the condition he waive legal claims, even though not a company policy, supported finding of pretext in FMLA claim, among other facts); *see also Karl v. City of Mountlake Terrace*, 2011 U.S. Dist. LEXIS 59085, at *13-14 (W.D. Wash. 2011) (severance agreements are admissible in retaliation claims when made contemporaneous to termination, as they are not governed by FRE 408); *Bartlett v. NIBCO Inc*., 2011 U.S. Dist. LEXIS 28072, at *11 (N.D. Ind. 2011) ("Severance pay packages contingent upon a release of claims which are offered *contemporaneously with the notice of termination* are *not* covered by [Rule 408]," and the motive in offering same is admissible evidence in a retaliation claim and is admissible at trial in this case.) (citation omitted); *EEOC v. Republic Servs*., *Inc*., 640 F. Supp. 2d 1267, 1300 (D. Nev. 2009) (denying summary judgment and considering as evidence in wrongful termination case that a company would offer severance when an employee is supposedly terminated in a manner that doesn't warrant severance per an explicit company policy).

39. Plaintiff was subjected to discrimination through demeaning and/or derogatory treatment because of his aforesaid health conditions.

40. Plaintiff complained of disability discrimination and harassment to Defendants.

41. Plaintiff was abruptly terminated under false and pretextual circumstances as discussed herein on or about August 2, 2024.

42. Plaintiff believes and therefore avers that he was subjected to discrimination and retaliation because of (1) his known and/or perceived disabilities; (2) his record of impairment; (3) his requested medical accommodations of very limited time off for medical appointments or tube drainage; and (4) his complaints of disability discrimination.

43. These actions as aforesaid constitute violations of the ADA.

**COUNT II**
**Age Discrimination in Employment Act ("ADEA")**
**([1] Age Discrimination; and [2] Retaliation)**

44. The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

45. During Plaintiff's employment with Defendants, he was subjected to discrimination through demeaning and/or derogatory treatment because of his advanced age.

46. Plaintiff complained of age discrimination and age-related harassment to Defendants.

47. Plaintiff was abruptly terminated under false and pretextual circumstances as discussed herein on or about August 2, 2024.

48. Plaintiff believes and therefore avers that he was terminated from his position with Defendants because of his advanced age and because of his complaints of age discrimination.

49. These actions constitute unlawful age discrimination and relation in violation of the

ADEA.

**WHEREFORE**, Plaintiff prays that this Court enter an Order providing that:

A. Defendants are to promulgate and adhere to a policy prohibiting discrimination and retaliation in the future against any employee(s);

B. Defendants are to compensate Plaintiff, reimburse Plaintiff, and make Plaintiff whole for any and all pay and benefits Plaintiff would have received had it not been for Defendants' illegal actions, including but not limited to back pay, front pay, salary, pay increases, bonuses, insurance, benefits, training, promotions, reinstatement, and seniority;

C. Plaintiff is to be awarded liquidated and/or punitive damages, as permitted by applicable law, in an amount believed by the Court or trier of fact to be appropriate to punish Defendants for their willful, deliberate, malicious and outrageous conduct and to deter Defendants or other employers from engaging in such misconduct in the future;

D. Plaintiff is to be accorded other equitable and legal relief as the Court deems just, proper, and appropriate (including but not limited to damages for emotional distress/pain and suffering);

E. Plaintiff is to be awarded the costs and expenses of this action and reasonable attorneys' fees as provided by applicable federal law; and

F. Plaintiff is to be given a jury trial as demanded in the caption of this Complaint.

Respectfully submitted,

**KARPF, KARPF & CERUTTI, P.C.**

By: ______________________

Ari R. Karpf, Esq. (021842003)
8 Interplex Drive, Suite 210
Feasterville-Trevose, PA 19053
akarpf@karpf-law.com
(215) 639-0801

Dated: November 5, 2026